## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DAVID HARVEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 02-2476 (RCL)** |
| | ) | |
| **MOHAMMED, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff David Harvey, Personal Representative for the Estate of Curtis Suggs, moves [276] for attorneys' fees and costs from defendant the District of Columbia pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2). Plaintiff initially requested $1,675,946.55, plus interest to be calculated as of the time of the award.[1] The District of Columbia Opposes [282] the motion and argues that plaintiff should be awarded "no more than" $890,312.55 in attorneys' fees and costs.

The District has also moved [281] for limited discovery to obtain time entries plaintiff's counsel excised from their billing records, information regarding the fee arrangement between plaintiff and counsel with respect to settling defendants, and time records from counsel in their original electronic format, apparently to facilitate searching and analyzing the records for purposes of responding to the motion for attorneys' fees.

---

[1] In his Reply, plaintiff decreased his request to $1,661,054.70 to account for concessions he made with respect to certain travel and press expenses. *See* Pl.'s Reply in Support of Pl.'s Mot. for Att'y Fees, Expert Fees, Expenses and Costs 2, ECF No. 293.

The Court will award $1,118,976.30 in attorney's fees and costs. The Court denies the District's request for discovery given that the information sought is no longer relevant.

## I.      BACKGROUND

The facts of this case are described in greater detail in earlier memorandum opinions. *See Harvey v. Mohammed*, 2013 WL 1749899 (D.D.C. 2013); *Harvey v. Mohammed*, 841 F. Supp. 2d 164 (D.D.C. 2012). This Court granted partial summary judgment for plaintiff in January 2012, holding for him on his § 1983 claim against the District, and his negligence claims against the District and two other defendants. *Harvey*, 841 F. Supp. 2d at 174–80, 186–92. The Court later held for plaintiff with respect to his claim under D.C. Code § 7-1305.14. Pretrial Order 13, ECF No. 196. Defendants Symbral and the Mohammeds ("the Symbral defendants") settled before trial, Order, ECF No. 221, and the case against another defendant was dismissed for failure to prosecute, Pretrial Order 17.

After a jury trial on damages, judgment in the amount of $2,650,000 was entered against the District of Columbia. The Court denied a subsequent motion for new trial or remittitur, *Harvey*, 2013 WL 1749899, and plaintiff moved for an award of attorneys' fees and costs. Pl.'s Mot. Att'y Fees, Expert Fees, Expenses and Costs, ECF No. 276 [hereinafter Pl.'s Mot.].

The District of Columbia thereafter appealed the Court's Judgment and the denial of its motion for new trial; plaintiff cross-appealed. Notice of Appeal, May 20, 2013, ECF No. 296; Notice of Cross Appeal, June 3, 2013, ECF No. 298. These appeals are pending in the D.C. Circuit. However, in the interest of justice, the fee issues should be considered at this time, rather than held in abeyance pending the outcome of the appeal. *See* LCvR 54.2.

## II.    LEGAL STANDARD

A fee applicant "bears the burden of establishing entitlement to [a fee] award, documenting the appropriate hours, and justifying the reasonableness of the rates." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Section 1988 of Title 42 provides that, in an action to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "[T]he prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)).

"'[P]laintiffs may be considered prevailing parties . . . if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)); *see also id.* at 433 n.8 (citing *Taylor v. Sterrett*, 640 F.2d 663, 669 (5th Cir. 1981) ("[T]he proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought.")). "This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.* at 433.

Without defining the term, § 1988 provides that a court may award a "reasonable attorney's fee." In general, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010); *see also Blum*, 465 U.S. at 897 (quoting the Senate Report and

explaining that "'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys.'").

The "lodestar approach" has become the dominant method used by federal courts in calculating "reasonable" fees. *Perdue*, 130 S. Ct. at 1672. Under that approach, the attorney's fee is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blanchard*, 489 U.S. at 94.

To determine reasonable hourly rates, it is customary in this District to apply the *Laffey* Matrix developed in *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part and rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). *Smith v. Dist. of Columbia*, 466 F. Supp. 2d 151, 155–56 (D.D.C. 2006). Federal courts need not automatically award *Laffey* rates, but can use their discretion to determine whether such rates are warranted. *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154 (D.D.C. 2012).[2]

The number of hours claimed by a prevailing party must also be reasonable. A district court may exercise discretion to reduce a fee award by particular amounts "in response to specific objections," *DL v. Dist. of Columbia*, 256 F.R.D. 239, 243 (D.D.C. 2009) (citing *Donnell v. United States,* 682 F.2d 240, 250 (D.C. Cir. 1982)), or "'by a reasonable amount without providing an item-by-item accounting.'" *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004).

As discussed in more detail below, a reasonable attorney's fee may also include certain other expenses. For example, in this Circuit, work performed by paralegals and law clerks is

---

[2] There are two versions of the *Laffey* Matrix. One is maintained by the Civil Divison of the Office of the United States Attorney ("USAO Matrix") and adjusts the matrix annually by the change in the United States Consumer Price Index ("CPI") for the Washington, D.C. area. *Smith*, 466 F. Supp. 2d at 155–56. A second version calculates the matrix rates for each year using the legal services component of the Consumer Price Index. *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 14 (D.D.C. 2000). Plaintiffs may generally rely on either version. *Covington*, 57 F.3d at 1109. Plaintiff has relied on the USAO matrix and the District does not object.

compensable. *Sexcius v. Dist. of Columbia*, 839 F. Supp. 919, 926 (D.D.C. 1993) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)), as well as certain other expenses. This is discussed in more detail below. Finally, § 1988 also allows for the recoupment of "costs" which are likewise described in greater detail below.

When claims for attorney's fees are brought against the government, courts should exercise "special caution" in scrutinizing the fee petition. This is "because of the incentive which the [agency's] 'deep pocket' offers to attorneys to inflate their billing charges and to claim far more as reimbursement [than] would be sought or could reasonably be recovered from most private parties." *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 941 (D.C. Cir. 1984) (internal citation omitted); *see also Ctr. for Biological Diversity v. Norton*, 2005 WL 6127286, at *1 (D.D.C. 2005) ("Courts must review fee applications carefully to ensure that taxpayers only reimburse prevailing parties for reasonable fees and expenses that contributed to the results achieved . . . ."). However, the D.C. Circuit has also noted, in the context of the Title VII attorney's fee provision, that although "the government has a 'deep pocket' and . . . any fee request should be examined with care, . . . fees should be neither lower, nor calculated differently, when the losing defendant is the government." *Copeland v. Marshall*, 641 F.2d 880, 896 (D.C. Cir. 1980) (en banc).

## III.   ANALYSIS

### A.   Plaintiff is a Prevailing Party

Plaintiff argues that he is a "prevailing party" under 42 U.S.C. § 1988. Pl.'s Mem. P. & A. in Support of Mot. Att'y Fees, Expert Fees, Expenses and Costs, ECF No. 276 [hereinafter Pl.'s Mem.]. The District does not challenge this contention and thus concedes the issue.

Moreover, plaintiff appears to meet the statutory requirement given that the Court granted summary judgment for plaintiff on his § 1983 claim.

### B. *Laffey* Rates May Be Used as Reasonable Hourly Rates

Plaintiff claims compensation for the time spent by at least three attorneys, lead counsel Harvey Williams, co-counsel Jeffrey P. Matthews, and associate attorney Gunella Lilly, as well as four paralegals.[3] He seeks application of the *Laffey* rates, as updated in the USAO Matrix. *See* Pl.'s Mem. 9; *see also* http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2013.pdf. To account for a delay in payment, he also seeks application of the current *Laffey* rates for all time expended, including time expended in the early 2000s.

The District does not contest the application of the *Laffey* rates and therefore has conceded that they apply. The District also does not appear to contest the application of current rates to account for the delay in payment. The Supreme Court has expressly stated that "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of" § 1988. *Jenkins*, 491 U.S. at 284. Thus, the Court will utilize current *Laffey* rates in the calculation of an appropriate fee.

### 1. *Attorney Harvey Williams's Rates*

Mr. Williams began to devote compensable time to this case in mid-2000, when he met with David Harvey regarding the possibility of filing suit. At that time, Mr. Williams had approximately seventeen years of post-law school experience. *See* Williams Decl. 7 (stating that Mr. Williams graduated from law school in 1980, received a Masters in Law and Taxation in

---

[3] Plaintiff suggests he will submit a supplemental filing to seek compensation for time previously devoted by Robert S. Mandancy, Jr. Pl.'s Mot., Ex. A (Decl. of Harvey S. Williams, Dec. 21, 2012), at 8 [hereinafter Williams Decl.]. However, motions for attorneys' fees are due within fourteen days of judgment, absent a Court order to the contrary. Fed. R. Civ. P. 54(d)(2)(B). Here, the Court granted several consent motions to extend the deadline for filing. See, e.g., Order, ECF No. 251; Order, ECF No. 255. The Court did not grant plaintiff an extension to seek fees for work performed by Mr. Mandancy. Thus, the Court would consider untimely any supplemental filing seeking compensation for work already performed by Mr. Mandancy.

1981, but began his post-law school legal experience in 1983); *see also* Pl.'s Mot., Ex. A-1 (Attorney Time), at 2 (listing the first compensable time entry as June 16, 2000).  For 2012 to 2013, the *Laffey* matrix suggests $445 per hour as an appropriate rate for attorneys with eleven to nineteen years of experience.  Mr. Williams devoted approximately 104.45 hours during the years 2000, 2001 and 2002 when he had less than 20 years of experience and will be compensated at $445 per hour for that time.  As a result, his compensation will be reduced by $6267 to account for this difference in the hourly rate.  From 2003 onward, Mr. Williams had over 20 years experience and will be compensated at $505 per hour.

### 2.    Attorney Jeffrey P. Matthews's Rates

Mr. Matthews was brought into this matter in early 2012.  Pl.'s Mot., Ex. B (Decl. of Jeffrey P. Matthews), at 2 [hereinafter Matthews Decl.].  He graduated from law school in 1982 and thus had over twenty years of post-law school experience at all times during the case.  *Id.* at 1.  The appropriate *Laffey* rate for Mr. Matthews's work is $505 per hour.

### 3.    Attorney Gunella Lilly's Rates

Associate attorney Gunella Lilly completed work between July 2010 and March 2012. Pl.'s Mot., Ex. A-2 (Lilly Attorney Time), at 1.  She had between zero and three years experience when completing these tasks.  Pl.'s Mot., Ex. A, Decl. of Harvey S. Williams, at 8 (noting that Lilly graduated from law school in 2009).  The appropriate *Laffey* rate for Lilly's work is thus $245 per hour.

### 4.    Paralegals' Rates

Three to four paralegals were used throughout this litigation:  Luca T. Romano, Melanie LaMotta, Kelly Padgett, and Ben Turner.  Williams Decl. 9.  The appropriate *Laffey* rate for paralegals is $145.

The rates for each attorney and the paralegals are thus:

|  | Years Experience | *Laffey* Rate |
|---|---|---|
| Attorney Harvey Williams | 17–19 (2000–2002) | $445 |
|  | 20+ (2003–Present) | $505 |
| Attorney Jeffrey Matthews | 20+ | $505 |
| Attorney Gunella Lilly | 0–4 | $245 |
| Paralegals (Luca T. Romano, Melanie LaMotta, Kelly Padgett, Ben Turner) | N/A | $145 |

The Court now turns to particular concerns the District raises about plaintiff's fee request.

## C.        Specific Objections to Time Expended

The District raises a number of specific objections to the time expended by counsel. These fall into several categories.   First, the District argues that certain tasks are not compensable at all, either under § 1988 or because of the nature of this case and the rates and time requested.  This category includes time spent establishing the estate of Mr. Suggs; time engaging in public relations activities; and time allegedly devoted "solely" to claims against the Symbral defendants.  Next, the District complains that the time and/or hourly rates sought for certain tasks are excessive.  This category includes: time plaintiff's lead counsel spent acquiring expertise subsumed in his maximum hourly *Laffey* rate; time devoted to the claims against *both* the District and the Symbral defendants; travel time; mediation preparation time; time devoted to a mock trial or focus group; and time researching related litigation and municipal liability. Finally, the District lodges miscellaneous objections.  These include: that many time entries are inadequately detailed; that plaintiff is not entitled to interest on the fee award; that expert fees are not compensable; and that the remainder of plaintiff's costs and expenses are unsupported by any documentation.

The Court addresses these objections below in the order raised by the District.

Before turning to those objections however, the Court notes that, given that the District was able to scan and electronically search plaintiff's time records, the District's discovery request for an electronic version of the hours is now moot.  Additionally, the Court rejects the District's suggestion that discovery of the amount of attorney's fees paid by Symbral as part of a settlement "would provide highly probative information regarding what Plaintiff and counsel consider reasonable fees in this case."  Def.'s Mot. Conduct Limited Disc. 7, ECF No. 281.  The Court determines what is reasonable under § 1988 and need not consider what amount plaintiff considered reasonable as part of a settlement.

1.      *Time Spent on the Estate of Mr. Suggs*

This case fundamentally dealt with the precipitous decline in health and ultimate death of Curtis Suggs, a severely disabled man committed to the custody of the District of Columbia.  *See Harvey*, 841 F. Supp. 2d at 170–73.  Plaintiff seeks reimbursement for time spent establishing the estate of Mr. Suggs.

The District argues that this time is not compensable because § 1988 only provides for attorney's fees in a *civil rights* action.  Def.'s Opp'n 11.  The District cites *Webb v. County Board of Education*, in which the Supreme Court affirmed a denial of fees for time spent pursuing *optional* administrative remedies challenging the termination of employment of a public school teacher.  471 U.S. 234 (1985).  These remedies were not required to be exhausted prior to pursuit of the § 1983 claim and the Court noted that the proceedings were "simply . . . not any part of the proceedings to enforce §1983 . . . ."  *Id.* at 241.  By contrast, attorney's fees under a similar statute were allowed for pursuit of an administrative remedy required by statute to be exhausted before commencement of the federal action.  *See id.* at 240 (discussing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980)).

Here, plaintiff argues that time spent establishing the estate of Mr. Suggs is recoverable because the § 1983 survival claim could not be filed until the estate was established. "[E]stablishment of the estate was the necessary predicate of filing and litigating the § 1983 claim," plaintiff avers, thus "the time counsel spent establishing the estate was time 'reasonably expended on the litigation.'" Pl.'s Reply (quoting *Hensley*, 461 U.S. at 433).

The Court agrees with plaintiff. After Mr. Suggs's death, any § 1983 cause of action which had accrued to him survived in favor of his legal representative, namely, his estate.[4] The costs of establishing that estate were necessary to the pursuit of the § 1983 action and were thus "reasonably expended on the litigation." The Court will award attorneys' fees for the establishment of the estate. However, as with all other tasks, work on the estate done by Mr. Williams prior to 2003 will be compensated at $445 per hour rather than $505 per hour.

### 2. Time Spent Acquiring Expertise

The District argues that plaintiff should not be compensated for $17,397.25 in attorneys' fees for 34.45 hours spent consulting with other attorneys and various experts. Def.'s Opp'n 12. Specifically, the District argues that this would compensate plaintiff for time his counsel spent acquiring expertise that is "subsumed in his maximum hourly *Laffey* rate." *Id.* In the alternative, the District argues that the time spent "acquiring legal and other expertise necessary" to litigate this case should be compensated at an hourly rate significantly reduced from the maximum *Laffey* rate." *Id.* The 34.45 hours identified by the District include nearly eleven hours spent

---

[4] Under 42 U.S.C. § 1988, a district court's jurisdiction in civil rights actions "shall be exercised and enforced in conformity with the laws of the United States . . . but . . . where they are not adapted to the object, or are deficient . . . , the common law . . . of the State wherein the court having jurisdiction of such civil or criminal cause is held . . . shall be extended to and govern the said courts in the trial and disposition of the cause . . . ." Federal law does not dictate the survival of civil rights actions under § 1983; the law of the state in which the district court sits governs survival of civil rights actions. *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978). In the District of Columbia, D.C. Code § 12-101 allowed Mr. Suggs's cause of action to survive in favor of his legal representatives. *See* D.C. Code § 12-101 ("On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of or against the legal representative of the deceased.").

talking with other attorneys who took part in the *Evans* class litigation,[5] about six hours talking with a physician regarding medical records and an autopsy, five hours on legal research related to § 1983 actions and other issues, and several hours on probate matters.

The District cites *Heller v. District of Columbia* for the proposition that plaintiff's counsel should not be compensated at maximum *Laffey* rates "for time spent developing [his] expertise." *Id.* at 12–13 (citing *Heller*, 832 F. Supp. 2d 32, 61 (D.D.C. 2011)). Plaintiff responds that *Heller* dealt with legal fees that an attorney paid to outside counsel and claimed as an expense. Here, plaintiff seeks compensation for time spent by plaintiff's counsel discussing the case with other attorneys.

The Court agrees with plaintiff that this case is distinguishable from *Heller* and the Court is unaware of any caselaw suggesting that denial of these hours would be appropriate. Additionally, none of the time claimed appears to be excessive. For example, although plaintiff spent about eleven hours speaking with attorneys who had worked on the *Evans* class litigation, the outcome of the *Evans* litigation and the associated Pratt decree were key to plaintiff's success in the present litigation. Moreover, some of the time flagged by the District was spent talking with a physician regarding medical records, a vital task in a suit claiming constitutional violations on the basis of substandard medical care.

---

[5] As noted in an earlier Memorandum Opinion by this Court, Curtis Suggs was also a member of a class of plaintiffs in *Evans v. Gray*, No. 76-cv-293 (D.D.C.) (Huvelle, J.). That class was defined as "'those individuals who are now, have been, or will be residing at [the] Forest Haven [institution] as a result of involuntary commitment.'" *Harvey*, 841 F. Supp. 2d at 187. Litigation by the *Evans* class led to a decree holding that the class "'has a federal constitutional right'" to "'habilitative care and treatment based upon the Due Process Clause of the Fifth Amendment'" and "'to be free from harm'" under the Fifth and Eighth amendments. *Id.* (quoting Pratt decree). The *Evans* litigation and Pratt decree were thus relevant to whether Mr. Suggs had a Fifth Amendment right which had been violated in this case. The *Evans* litigation was also relevant to whether the District had a "custom or practice of deliberate disregard for the medical needs of *Evans* class members" and whether it had "actual or constructive knowledge of the risk of constitutional violations to the *Evans* class members unless adequate medical care was provided." *Id.* at 187. It was on the basis of these conclusions that this Court entered summary judgment for plaintiff on his § 1983 claim. *Id.*

The Court can see no reason why plaintiff should not be compensated for this type of research and due diligence.  As a result, the Court will not disallow the 34.45 hours identified by the District as non-compensable and will not require that these hours be compensated at a lower rate than plaintiff's remaining hours.

### 3.      Hours Spent Litigating Against Both the District and Symbral Defendants

The District argues that plaintiff has improperly sought to recover $688,754 in attorneys' fees for 1808.4 hours spent simultaneously pursuing plaintiff's § 1983 claim against the District and his claims against the Symbral defendants.  *See* Def.'s Opp'n 13–16;  *id.*, Ex. 10.  "[T]o allow Plaintiff's counsel to recover attorney's fees from the District for work that went into litigating Plaintiff's claims against Symbral would be to award counsel a windfall at the District's expense."  Pl.'s Mem. 14–15.  The District asks the Court to "hold the District responsible for no more than 50% of these requested fees . . . ."  The District also seeks discovery to obtain supporting documentation to enable verification of plaintiff's counsel's exercise of billing judgment and information about the fee arrangement between plaintiff and counsel with respect to the Symbral settlement.  *Id.* at 15.

In response, plaintiff argues that the District has conceded that the time was reasonably related to the litigation and that the District has misunderstood how the time was used.  Plaintiff argues that "most" of the time identified by the District was spent on the § 1983 claim against the District.  Pl.'s Reply 4.  Moreover, plaintiff suggests that the District must reimburse him for time relating to both the District's liability and Symbral's because he "could not have developed the civil rights case against the District without conducting discovery and depositions of the Symbral caretakers and staff."  *Id.* at 4–5.

The Court finds that some of the time identified by the District was related solely to the § 1983 claim against the District and thus is chargeable only to the District.  The Court has identified 122 hours that apparently related solely to claims against the District.[6]  Of these, 82.15 hours were expended by Mr. Harvey, 26.6 by Gunella Lilly, and 13.25 by Luca T. Romano.  The Court will not discount or provide credit to the District for time that plaintiff expended in claims solely against the District under § 1983.

With respect to the remaining 1636.15 hours identified in Exhibit 10,[7] the District is correct that it is not liable for all attorneys' fees expended in pursuit of claims against multiple defendants.  "Where there are multiple defendants, each defendant must bear the prevailing plaintiff's fees for time spent on matters clearly related to the claims made against that defendant."  *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 514–15 (S.D.N.Y. 1984).[8]  In some cases, as here, the legal and factual issues at play may be so interrelated that it is impossible to separate time spent litigating against each defendant.  *Id.* at 514.  In such cases, the Court may allocate attorney's fees among the defendants.  *Id.*  "[T]he

---

[6] These include, for example, time spent on "legal research re Section 1983 decisions against city" on June 17, 2000; multiple entries related to § 1983 municipal liability issues (for example on June 27 and June 30, 2000 and on May 17 and May 27, 2004); and research regarding other cases against the District involving *Evans* class members (September 11 and October 18, 2007).  The Court does not consider hours spent researching § 1983 *generally* to be solely attributable to the claim against the District since plaintiff initially sought to hold the Symbral defendants liable under § 1983 as well and did not include those time entries in the calculation of hours related solely to the § 1983 claim against the District.

[7] Exhibit 10 also includes 50.25 hours in travel time, which the Court considers separately below.

[8] *See also Herbst v. Ryan*, 90 F.3d 1300, 1304 & n.9 (7th Cir. 1996) ("As the case law of the circuits amply demonstrates, the allocation of liability for attorneys' fees remains an area in which there is no simple formula of universal applicability.  A number of different approaches have been advanced . . . .  These range from the relatively simple—dividing fees equally among the defendants—to the more sophisticated methods of apportionment based on relative culpability."); *Jenkins by Agyei v. State of Mo.*, 838 F.2d 260, 266–67 (8th Cir. 1988) *aff'd sub nom. Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989) (noting that "defendants' relative degrees of culpability and the time the plaintiffs were forced to spend litigating against the respective defendants" are "appropriate considerations in determining who must shoulder the fees award"); *Berry v. Sch. Dist. of City of Benton Harbor*, 703 F. Supp. 1277, 1286–87 (W.D. Mich. 1986) (noting that in apportioning attorneys' fees and costs among multiple defendants, federal courts generally consider factors such as the defendants' relative culpability, the percentage of time plaintiff devoted to litigating against each defendant, and the relatively ability of each defendant to pay).

inter-relatedness of all issues and claims may cause a court to apportion a fee award equally or roughly equally among all defendants." *Berry*, 703 F. Supp. at 1286–87.

Here, given the inter-relatedness of the issues, the difficulty of separating time spent litigating against each defendant, and the difficulty of apportioning relatively culpability, the Court allocate these costs evenly between the District and the Symbral defendants. Therefore, the Court will reduce by fifty percent the compensation for time spent on claims against Symbral and the District. Plaintiff's fee award will thus be reduced by $363,609.50 as illustrated in the chart below.

| | Hours Expended | Hourly Rate | Subtotal | 50% Reduction | Total Allowable |
|---|---|---|---|---|---|
| Harvey Williams (Attorney) | 48.35 (2000–2002) | $445 | $21,515.75 | -$10,757.88 | $10,757.88 |
| | 922.85 (2003–Present) | $505 | $466,039.25 | -$233,019.63 | $233,019.63 |
| JM (Attorney) | 4 | $505 | $2,020 | -$1010 | $1010 |
| Gunella Lilly (Attorney) | 262.8 | $245 | $64,386 | -$32,193 | $32,193 |
| Luca T. Romano (Paralegal) | 350.65 | $145 | $50,844.25 | -$25,422.13 | $25,422.13 |
| Ben Turner (Paralegal) | 35.5 | $145 | $5,147.50 | -$2,573.75 | $2,573.75 |
| Melanie LaMotta (Paralegal) | 12 | $145 | $1,740 | -$870 | $870 |
| *TOTAL* | 1636.15 | N/A | $611,692.75 | -$363,609.50 | $363,609.50 |

The Court's decision on this issue largely negates the need for discovery. The District's discovery motion was grounded in part on its concern that much of the compensation requested "clearly relate[s] to his claims against Symbral." Def.'s Mot. Conduct Limited Disc. 5. The Court has reviewed the submitted time records and determined that plaintiff may be compensated for only half of the time devoted to claims against both defendants, as requested by the District. The Court sees no reason why the District should have access to claims omitted from plaintiff's

fee request.  *See Beck v. Test Masters Educ. Servs.*, 2013 WL 772879, at *8 n.7 (D.D.C. Mar. 1, 2013) ("[T]he Court is concerned with the reasonableness of the hours claimed, not the hours excluded.").

> ### 4.     Time Allegedly Devoted Solely to Symbral Claims

The District argues that 146.45 hours, or $61,057.25 in fees, claimed by plaintiff were "entirely unrelated to Plaintiff's § 1983 claim against the district" and thus not compensable under § 1988.  Def.'s Opp'n 16; *id.*, Ex. 11.  The attached exhibit includes hours spent on the deposition of Leon Mohammed, one of the Symbral defendants, as well as Symbral designees and experts.  *See* Ex. 11 (listing time related to the deposition of Rhonda Seegobin, an employee of Symbral and one of Symbral's 30(b)(6) designees; time related to the deposition of Symbral expert, Gregory Compton, M.D.; time related to Joel L. Falik, M.D., Symbral's neurosurgery expert).  In short, most of the time appears to relate to Symbral's care of Mr. Suggs.

Plaintiff responds that the time actually relates to claims against both the District and the Symbral defendants.  Pl.'s Reply 6–7.  "[D]iscovery related to Symbral's substandard care was a necessary component of the case against the District, and has been properly included in Plaintiff's Motion."  *Id.* at 7.

The Court agrees with plaintiff.  However, as with the hours cited above, which related to both Symbral and the District, the Court will reduce the allowable compensation by fifty percent to account for the necessity that each defendant bear its own share of the attorneys' fees and costs.  Thus, the Court will reduce the attorneys' fee by half of the amount identified by the District in Exhibit 11, or by $30,528.63.[9]

> ### 5.     Interest

---

[9] Because the hours at issue were expended after 2003, they all would normally be compensated at the same hourly rate of $505 and the Court can reduce the award by fifty percent without taking into account multiple hourly rates for Mr. Williams.

Plaintiff seeks "interest accrued as of the date of the award."  Pl.'s Mem. 11.  The District argues that an interest award would be "an improper lodestar enhancement" appropriate only in limited circumstances.  Def.'s Opp'n 16–17 (quoting *Perdue*, 130 S.Ct. at 1674–75.

Plaintiff counters that he seeks interest only "on the amount of attorney's fees ultimately approved by the Court from the time the award is entered as a judgment in favor of the Plaintiff until such time as the judgment is satisfied."  Pl.'s Reply 8.

Section 1961(a) of Title 28 provides:

> Interest shall be allowed on *any money judgment* in a civil case recovered in a district court [and] . . . shall be calculated *from the date of the entry of the judgment*, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a) (emphasis added).  This section governs postjudgment interest on attorney's fees as well as general judgments.  *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 485 (6th Cir. 2001) ("Most of our sister circuits have either expressly or impliedly concluded that the 'any money judgment' provision of § 1961 includes a judgment awarding attorney fees."); *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 972 (D.C. Cir. 2003) (citing *Drabik* for the proposition that a claim for postjudgment interest on attorney's fees would be available under 28 U.S.C. § 1961(a)).

Circuit courts are split regarding when interest should begin to accrue under § 1961. Specifically, they diverge on how to interpret "the date of the entry of the judgment," and the D.C. Circuit has not yet addressed the question.  The minority view is that post-judgment interest does not accrue until a district court quantifies the award.  *See, e.g.*, *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 528 (3d Cir. 2001); *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Exp., Inc.*, 962 F.2d 1470, 1476–77 (10th Cir. 1992).  Under that view, interest would run from today's date.

16

By contrast, most circuit courts and at least one judge on this court, have held that interest runs from the judgment "which unconditionally entitles the prevailing party to reasonable attorney fees." *Drabik*, 250 F.3d at 495; *see also Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995) ("Interest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set."); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir. 1983) (en banc) ("If a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the date of judgment."); *Boehner v. McDermott*, 541 F. Supp. 2d 310, 324 (D.D.C. 2008) ("[T]he Court will follow the majority view and, accordingly, holds that interest began to accrue on the fee award on" the date of the "valid judgment that unconditionally entitled [plaintiff] to an award of attorneys' fees . . . ."). Under the majority view, the judgment entitling a prevailing party to reasonable attorney's fees *may* be the underlying merits judgment if it unconditionally entitles the winner to attorney's fees. *See, e.g.*, *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331–32 & n.24 (5th Cir. 1995) (quoting *Copper Liquor* and noting that because the plaintiff in *Louisiana Power and Light* "recovered under a mandatory fee shifting statute, it became entitled to fees on the date of judgment on the merits."). However, the judgment unconditionally entitling a party to attorney's fee may instead by the date that the Court quantifies the award. Here, for example, the Court granted partial summary judgment to plaintiff on his § 1983 claim in January 2012, arguably rendering him a "prevailing party." *See Harvey*, 841 F. Supp. 2d at 192. However, because attorney's fees under § 1988 are discretionary, the January 2012 judgment did not *unconditionally* entitle plaintiff to fees.

In this case, the Court need not decide whether to follow the majority or minority views. Under either view, the result is that interest will run from the date of today's Order, which both unconditionally entitles plaintiff to fees and quantifies those fees.

### 6.   *Travel Time*

The District argues that plaintiff should be compensated for travel time at half the attorneys' hourly rates and that he should not be compensated for the travel time of Mr. Matthews, an attorney residing and practicing in Richmond, Virginia.  Def.'s Opp'n 19 (citing *Cooper v. U.S. R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994)).  Plaintiff seeks travel time for himself and other employees, as well as $3030 for the six hours that Mr. Matthews spent traveling between Richmond and Washington, D.C.  *Id.*

Plaintiff concedes that travel time should be compensated at half the attorneys' hourly rates, but disputes the number of hours devoted to travel.  Plaintiff does not address defendant's argument that Mr. Matthews' travel time should not be compensated.

The court agrees that reimbursement for travel costs should compensated at half the attorneys' hourly rate.  Additionally, because the Court found that any expenses related to claims against both the District and the Symbral defendants should be reduced by half, plaintiff's travel expenses will be reduced by half again to account for the fact that they appear to have related to claims against both Symbral and the District.[10]

Additionally, the Court will deny $3030 in compensation for the travel time of Mr. Matthews.  Travel time for out-of-town counsel is not reimbursable unless the plaintiff shows that local counsel "could not have rendered the service involved and thereby obviated the

---

[10] Any travel time claimed after March 18, 2012, will be compensated at half the attorneys' hourly rates but will not be reduced an additional 50 percent.  Plaintiff and the Symbral defendants notified this Court on that date that they had entered into a settlement agreement.  Thus, any time expended after that date was presumably related solely to claims against the District.

necessity of employing an attorney who must necessarily spend billable time travelling from his normal home to the work site . . . ." *See In re N. (Bush Fee Application)*, 59 F.3d 184, 194 (D.C. Cir. 1995).[11] "Especially is this true where the worksite is in Washington, DC.  Here, if anywhere, there is no shortage of lawyers." *Id.*  Here, plaintiff has not made a showing that competent local counsel was unavailable and Mr. Matthews' travel time will not be compensated.

Accordingly, plaintiff's compensation for travel time will be reduced by $3,030 for non-compensable travel time of Mr. Matthews.  His compensation will be further reduced by $6,316.56 to account for the fact that travel time should be compensated at half the attorney's hourly rate and that the District is responsible for only half of the travel costs incurred prior to settlement.

| | Hours Expended | Half Hourly Rate | Subtotal | Reduction | Allowable |
|---|---|---|---|---|---|
| *Pre-Settlement Travel Subject to Additional 50% Reduction* | | | | | |
| Harvey Williams | 44.25 | $252.5[12] | $11,173.13 | -$5,586.56 | $5,586.56 |
| Gunella Lilly | 6 | $122.5 | $735 | -$367.50 | $367.5 |
| Luca T. Romano | 1 | $72.5 | $725 | -$362.50 | $362.5 |
| *Post-Settlement Travel Not Subject to Additional 50% Reduction* | | | | | |
| Harvey Williams | 6.25 | $252.5 | $1578.13 | -$0 | $1,578.13 |
| | | | *TOTAL* | **-$6,316.56** | **$7,894.69** |

---

[11] Although *In re North* dealt with an attorneys' fees award under the Ethics in Government Act (EAJA), 28 U.S.C. § 591 et seq., that Act provides for reimbursement of "reasonable attorneys' fees" just as § 1988 does.  Thus, the reasoning is applicable here.

[12] None of the time claimed for travel was expended prior to 2003 and thus none need be compensated at the lower rate applicable Mr. Williams's time before that date.

7. *Mediation Preparation*

The District argues that plaintiff's request for $50,910.75 for 125.55 hours preparing for mediation is "patently unreasonable" and that plaintiff should only be compensated for a total of sixteen hours spent preparing for mediation.  Def.'s Opp'n 20.  The District cites no legal authority in support of its argument.

Plaintiff responds that there were two mediation sessions in this case, one in July 2011 and the other in February 2012.  Plaintiff requested compensation for 55.95 hours for the first mediation, including four hours of time at the mediation; plaintiff requested compensation for 63.6 hours for the second mediation.  Pl.'s Reply 9–10.  Plaintiff also points out that six of the hours identified by the District were not expended in relation to mediation but in preparation for summary judgment or trial.

While the time expended might be more than ideal, the Court does not find it so excessive as to warrant reduction.  Moreover, the second mediation resulted in a settlement between plaintiffs and the Symbral defendants.  The Court will not reduce the award.

8. *Mock Trial / Focus Group*

Plaintiff seeks $16,678.25 in attorneys' fees for 57.05 hours spent preparing for and conducting a mock trial, or "focus group."   The District argues that plaintiff bears the burden of demonstrating the reasonableness of the expenses and that, because he has failed to do so, no fees should be awarded for time spent on the focus group.  Plaintiff responds that the costs were "moderate" and "fully compensable."

The case cited by the District to oppose the award of fees for mock trials actually supports an award of fees.  "Time devoted to exercises such as these generally is deemed compensable so long as the number of hours is reasonable."  *Finkelstein v. Bergna*, 804 F. Supp.

1235, 1239 (N.D. Cal. 1992) (citing *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).[13]

The Court does not find the hours expended on the mock trial to be excessive and will not reduce the award for these hours.

9.    Evans *and Related Research*

The District argues that plaintiff "seeks attorney's fees for an excessive number of hours" that his counsel spent reviewing *Evans* pleadings, conducting *Evans*-related municipal liability research, and researching municipal liability and § 1983 claims. Def.'s Opp'n 21. The District also argues that "Mr. Williams attempted to bill the District unsuccessfully for time he spent researching *Evans* dating back to April 2002 in another lawsuit, *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212 (D.D.C. 2002)." *Id.* The District provides no support for this assertion, nor does it estimate the number of hours spent on any of these activities.

Plaintiff explains that "to firmly establish its municipal liability claim and the District's policy of deliberate disregard to *Evans* class members, counsel reviewed thousands of pages of court orders and court monitor reports from 1978 through 2001." Pl.'s Reply 13. Plaintiff argues that "[m]uch of this research was necessitated by the District's refusal [during discovery] to admit that the Stipulations that it made in *Evans* were true." *Id.* Plaintiff denies that he included time spent on *Does I through III* in the current fee petition. *Id.*

Based on a review of the time requested, it appears that plaintiff has sought compensation for about 195 hours spent researching the *Evans* litigation, municipal liability, and § 1983 claims. About 33 of these hours were expended in response to motions by the District. This hardly seems excessive for litigation spanning approximately twelve years, in which § 1983

---

[13] The Court in *Finkelstein* disallowed costs for the first of two mock trials because the first related to liability and a prior ruling had already "virtually assured . . . plaintiff victory on the liability aspect of the case . . . ." *Id.* at 1258–59.

liability was a major issue, and indeed the basis of the large jury award obtained by plaintiff. The Court will not reduce compensation for time expended researching these matters.

>    10.    *Time Spent Engaging in Public Relations*

The District argues that $1010 sought for two hours spent on a press conference and communication with the D.C. Council is not compensable under § 1988.  Def.'s Opp'n.  22. Plaintiff disputes that he held a press conference but concedes that the hour responding to press inquiries and calling legal organizations was not compensable.  However, he maintains that the hour he spent researching the District's lien against the Estate of Curtis Suggs and communicating with the D.C. Council regarding the lien and removal thereof were compensable.

The Court agrees that neither press activities, nor attempts to influence the City Council are compensable.  In the EAJA context, the D.C. Circuit has stated that discussions with press are not compensable.  *Role Models*, 353 F.3d at 973.  Other Circuits have disallowed costs for efforts to "sway public opinion and influence State-policy makers," *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994), and fees for lobbying and publicity claimed under the Rehabilitation Act and the Equal Access to Justice Act (EAJA), *Greater Los Angeles Council on Deafness v. Cmty. Television of S. Cal.*, 813 F.2d 217, 221 (9th Cir. 1987).  *See also Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939 (3rd Cir. 1995).  The Court will follow the reasoning of these cases and disallow $1010 for press-related activities and communications with the D.C. Council.

>    11.    *Inadequately Detailed Time Entries*

The District argues that plaintiff's fee request should be reduced by ten percent based on a lack of detail throughout his time records and statement of costs and expenses, arguing that "a fee applicant's failure to 'adequately describe the legal work for which the client is being billed'

warrants a reduction in the award."  Def.'s Opp'n 22 (quoting *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989) (per curiam)).  In support, the District cites entries such as "'organize deposition documents,'" "'organize case files,'" "'[m]eeting with attorney Lilly re: deposition indexes of D.C. 30(b)(6) representatives,'" and "'legal research: Opposition.'"  *Id.* at 23.

Plaintiff responds that his time entries are "not remotely similar" to entries disallowed in this Circuit such as "review cases," "review literature," and "email with A.G."  *See* Pl.'s Reply 15 (citing *Heller*, 832 F. Supp. 2d 32).

The Court believes that plaintiff's time entries are, at least in general, sufficiently detailed and do not warrant a ten percent reduction in fees.  Although "very broad summaries of work done and hours logged" are insufficient, a "fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (internal citations and quotation marks omitted).  However, the application must be "sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified.  The better practice is to prepare detailed summaries based on contemporaneous time records . . . ."  If the District Court finds documentation inadequate, it "may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.

The D.C. Circuit has found descriptions such as "Research and drafting of FOIA part of complaint" and "Court appearance on plaintiffs' motion for a preliminary injunction" to be "entirely adequate."  *Concerned Veterans*, 675 F.2d at 1332; *see also id.* at 1337 (considering entries such as "drafting motion for extension of time" and "Legal research-pro se attorneys' fees" to be "detailed").

Here, the District complains about entries such as "organize deposition documents," "organize case files," "meeting with attorney Lilly re: deposition indexes of D.C. 30(b)(6) representatives," and "legal research: Opposition."  These entries are part of a larger, detailed summary of the hours worked and plaintiff need not present "the *precise* activity to which each hour was devoted . . . ."  *Concerned Veterans* at 1327 (emphasis added).  Entries such as "Legal Research: Opposition" logged the day before plaintiff filed his Opposition to the District's Motion for New Trial are sufficient.  The Court also will not deny 4.5 hours, or $2272.50 in compensation, for organization of "deposition documents" and "case files."  Given the length of this case and the number of depositions conducted, organization of files and deposition documents would be warranted.  However, because these tasks could have been completed by a paralegal, they will only be compensated at the paralegal rate of $145/hour.  *Cf. Jenkins*, 491 U.S. at 288 n.10 (noting that secretarial or clerical tasks should not be billed at a paralegal rate, regardless of who performs them).[14]  Thus, compensation for this time will be reduced by $818 (from the requested $2272.50 for 4.5 hours to $1454.50).

Although the Court will not deny the time identified by the District, there are numerous entries, particularly those related to meetings with outside counsel or others, which do lack sufficient detail.  In this Circuit, it is inadequate to merely state that a meeting occurred without specifying the subject-matter or purpose.  *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) ("[W]e find numerous instances where the billing entries are not adequately documented.  The time records . . . are replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed.").

---

[14] Because organization of depositions and case files might include the need to understand some of the legal context, the Court will allow these expenses to be compensated at a paralegal rate.

The Court has identified approximately 44 hours of Mr. Williams's time that lack sufficient detail.  Of these, 9.15 hours were expended prior to 2003 and 34.25 were expended in 2003 and beyond.  These include entries such as "Telephone conference Carrie Weaver" on July 30, 2000; "Telephone conferences Mr. Harvey" on August 2, 2000; and "Review records; telephone conference Kelly Bagby, Esq." on August 10, 2000.  The Court will disallow the $21,368 associated with these hours.

### D.    Objections to "Costs and Expenses"

Plaintiff argues that, as part of attorneys' fees, he is entitled to recover "certain expenses—such as those for postage, photocopying, travel, telephone, and electronic research— normally charged by . . . attorneys to fee-paying clients."  Pl.'s Mem. 13 (citing *Brown v. Gray*, 227 F.3d 1278, 1297–98 (10th Cir. 2000)).  Plaintiff also seeks "other reasonable litigation expenses" and "expert fees."  He suggests that "'incidental and necessary expenses incurred in furnishing effective and competent representation'" are recoverable as part of attorney's fees.  *Id.* (citing *Sexcius*, 839 F. Supp. at 926 n.24).

The District responds that expert fees are not recoverable under § 1988 in actions to enforce § 1983, Def.'s Opp'n 23 (citing *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 102 (1991)), and that the remainder of the requested costs and expenses should be denied because plaintiff has provided little detail and no supporting documentation.  *Id.* at 23–24. Finally, the District argues that certain expenses are not customarily considered part of reasonable costs, for example, the costs to prepare a powerpoint presentation for a mediation and costs associated with the mock jury.

### 1.    *Legal Standard*

Section 1988 provides for the recoupment of "a reasonable attorney's fee *as part of* the costs." 42 U.S.C. § 1988 (emphasis added). This section provides two possible avenues by which plaintiffs may recover outlays made in the course of litigation. First, plaintiff's "costs," as defined by statute, are clearly recoverable; second, certain "expenses" may be considered part and parcel of the "attorney's fee" and thus compensable as part of that fee.

i.    Costs

"Costs" are generally defined by 28 U.S.C. § 1920, which allows for the recovery of:

(1) Fees of the clerk and marshal,
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case,
(3) Fees and disbursements for printing and witnesses,
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case,
(5) Docket fees under section 1923 of this title, and
(6) Compensation of *court appointed* experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (emphasis added); *see also Casey*, 499 U.S. at 87 (referring to § 1920 is "an express limitation upon the types of costs which, absent other authority, may be shifted by federal courts"). Some of the above costs are limited by other provisions. For example, 28 USC § 1821 limits witness fees to $40 per day for each day's attendance and "the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

Section 1920 "embodies Congress's considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party" and the Court has been unwilling to expand the list of taxable costs absent explicit statutory authority. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987); *see also id.* at 445 (refusing to award expert fees

beyond the statutory limit because "absent explicit statutory or contractual authorization . . . federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920").[15]

ii.     Attorney's Fees

Section 1988 does not define "attorney's fees."  Some legislative history suggests the phrase includes "all incidental and necessary expenses incurred in furnishing effective and competent representation."   122 Cong. Rec. 35,123 (1976) (statement of Rep. Drinan).

The Supreme Court in *Missouri v. Jenkins* suggested that some "expenses" were compensable as part of a reasonable attorney's fee.  491 U.S. at 285 ("[T]he fee must take into account the work . . . of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account *of other expenses and profit*.").  Similarly, the Court in *Casey* suggested that expenses that were "traditionally included in the calculation of lawyers' hourly rates," even if billed separately now, are compensable as part of "attorney's fees" under § 1988.  499 U.S. at 99.

However, beyond the broad descriptions above, neither the Supreme Court nor the D.C. Circuit appear to have directly addressed the particular expenses that may be claimed as part of an attorney's fee under § 1988.

District courts in our circuit have allowed recovery under § 1988 for postage, long-distance telephone service, photocopying, and computer-assisted legal research.[16]  *See Smith v.*

---

[15] Justice Marshall, in dissent, noted that he did "not understand [the] decision to decide the question whether a district court may award expert witness fees under 42 U.S.C. § 1988." *Crawford Fitting*, 482 U.S. at 446 n.1.

[16] In compensating the plaintiff for computer-assisted legal research in *Smith*, the court found support from the D.C. Circuit's opinion in *Role Models*.  *See Smith*, 466 F. Supp. 2d at 161 (citing *Role Models*, 353 F.3d at 975).  However, *Role Models* considered whether computer-assisted legal research was compensable as an "expense" separate from the requested "legal fees" under the EAJA.  353 F.3d at 968, 975.  The EAJA explicitly provides for the award of "fees and other expenses," a phrase defined by statute.  Thus, the case is not perfectly analogous to the § 1988 context.  Nevertheless, the Circuit's rationale does not appear to have been based on the text of the EAJA.  *See id.* ("The government urges us to deny any recovery for computer-research charges, but we decline to do so because such services presumably save money by making legal research more efficient.").  That rationale would

*Dist. of Columbia*, 466 F. Supp. 2d 151, 161 (D.D.C. 2006) (allowing reimbursement for computer-assisted research, postage, and long-distance calls); *Sexcius*, 839 F.Supp. at 927 (concluding that "photocopying, postage, long distance telephone, messenger, and transportation and costs are customarily included in a reasonable 'attorney's fee'"); *cf. Kaseman v. Dist. of Columbia*, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004) (allowing reimbursement, in an IDEA case interpreting a nearly identical attorney's fees statute, for copying, faxing, and postage).[17]

There is admittedly some tension between these decisions and both the statutory text,[18] and decisions interpreting other attorney's fees statutes.[19] However, given the paucity of D.C.

_____

appear equally applicable in the § 1988 context. This Court will thus allow the recoupment of computer-assisted research as part of the attorneys' fees.

[17] Other Circuits have also allowed compensation for items such as "[r]easonable photocopying, paralegal expenses, and travel and telephone costs." *See Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979), *rev'd on other grounds*, 440 U.S. 568(1979) ("The authority granted in section 1988 to award a 'reasonable attorney's fee' included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."). The Sixth Circuit noted that costs "incurred by a party to be paid by a third party, not the attorney, including docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps, are not considered attorney's fees. *Id.* at 639. The Tenth Circuit has taken a slightly different approach, stating that "reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as attorney's fees under section 1988" and that, in deciding whether to award such expenses, the district court must engage in a factual inquiry into whether law firms in the region usually charge separately for these items. *Brown v. Gray*, 227 F.3d at 1297. In that case, the court noted that travel fees could be included, but that costs such as interpreters' fees and stenographic fees are incurred by third parties and are governed by 28 U.S.C. § 1920. *Id.* As a result of that approach, the 10th Circuit has refused to reimburse some items regularly allowed in this District, including photocopying, postage, telephone, books, and overtime secretarial work. *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) *disapproved of on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

[18] Permitting photocopying to be recovered as part of attorney's fees is arguably in some tension with the text of the § 1920 which allows costs to be recovered for the same or similar costs. See 18 U.S.C. § 1920(3)–(4) (allowing for reimbursement for "[f]ees and disbursements for printing," as well as "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"). When the attorney's fee provision of § 1988 was enacted, *see* The Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. No. 94–559, 90 Stat. 2641 (1976), the language of § 1920 was largely the same as it is today. *See* 28 U.S.C. § 1920 (1970) (permitting taxation of costs such as "[f]ees and disbursements for printing" and "[f]ees for exemplification and copies of papers necessarily obtained for use in the case . . . ."). There is no obvious reason why Congress would have intended the term "attorney's fees" to include costs already reimbursable. Nevertheless, it has been the practice among District Courts in this Circuit of allowing photocopying to be recovered as part of attorney's fees.

[19] For example, in the EAJA context, courts in our Circuit have denied compensation for "taxi fares, filing, wrapping and postage," *Action on Smoking & Health v. C.A.B.*, 724 F.2d 211, 224 (D.C. Cir. 1984), as well as "telephone, meals, travel and secretarial overtime," *NAACP v. Donovan*, 554 F. Supp. 715, 719-20 (D.D.C. 1982). The EAJA allows for the award of "fees and other expenses, in addition to the costs . . . ." 28 U.S.C. § 2412(d)(1)(A), and defines "fees and other expenses" as "includ[ing] the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the

Circuit or Supreme Court cases addressing particular compensable expenses, the Court will allow, as part of the attorneys' fee, for the reimbursement of postage, long-distance telephone service, photocopying, computer-assisted legal research, messenger and delivery services, facsimiles, and certain transportation costs.  As discussed in more detail below, expert fees are not compensable as part of attorneys' fees or costs, except to the extent that they comply with the $40 per day limit imposed by § 1821.

### 2.    Analysis

As a general matter, the Court rejects the District's argument that plaintiff's costs and expenses should be denied because he has failed to provide supporting documentation.  Although supporting documentation is ideal, in a case of this length and with this magnitude of costs and expenses, it is not absolutely necessary for purposes of proving that the expenses were actually incurred.  *Cf. Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 31 (D.C. Cir. 1982) (Wilkey, J., dissenting) ("The EPA also objects generally to environmental petitioners' requests for reimbursement for money spent on travel, meals, and postage because no bills were presented. However, it is acceptable here to rely upon the integrity of counsel.").  Absent an apparent inconsistency, the Court is comfortable that the expenses were actually incurred.  Nevertheless, lack of detail will affect the expenses and costs plaintiff may recoup.

With respect to expenses subsumed within attorney's fees, the Court will allow reimbursement for courier and delivery service, certain travel and lodging expenses, faxes, express mail, long-distance service, postage, and photocopying.  There is virtually no detail provided regarding the specific purpose of the faxes, express mail, long distance calls, postage, and photocopying.  Although the Court understands the difficulty of tracking these expenses and

---

preparation of the party's case, and reasonable attorney fees . . . ."  *Id.* § 2412(d)(2)(A). If postage had traditionally been included in an attorney's fee, there is a good argument that it would be available as part of the "reasonable attorney fees" allowable under the EAJA.

aligning them with particular tasks over a twelve year period, without that detail, the Court cannot determine the reasonableness and necessity of each charge.  Thus, the Court will reduce any compensable expenses in these categories by half.  While counsel's integrity may be sufficient to support the *fact* that he incurred expenses, the Court cannot rely on counsel's integrity to determine whether those expenses were "reasonable" as contemplated by statute.

The requested fees for travel and legal research warrant additional discussion.  Plaintiff has requested approximately $12,774.57 in expenses for travel, lodging, meals, and related expenses.[20]  Reasonable and necessary travel expenses incurred by Mr. Harvey and his staff are compensable.  These include the majority of the items listed under the heading "Transpo," such as gas, airline tickets, other transportation, and lodging incurred in meeting with clients or conducting depositions.  However, the Court will not compensate unexplained fees such as cancellation fees, a "Delta surcharge," excess baggage fees, "[a]dditional charges for airfare to SD," "BWI travel expense," and "meeting in Richmond, VA."  The Court will also disallow half of the airfare for the deposition of Dr. Edwards in Casper, Wyoming.  Plaintiff has not explained why it was necessary to schedule two separate trips to Wyoming within three months.  Finally, the court will disallow all of the travel and lodging expenses under the heading "Expenses."  These are primarily for individuals other than the attorneys and staff employed in this case.  For example, they include lodging, airfare, and other expenses for witnesses, the parties, and a "media specialist."  They also include the lodging and transportation costs of out-of-town counsel, Mr. Matthews.   Lodging costs for the parties, witnesses, and consultants are neither the sort of expense typically included in attorney's fees, nor do they fall under the definition of

---

[20] These include expenses under the headings "Transpo," "Travel expense," "Expenses," and all of the Costs and Expenses requested by Mr. Matthews.

"costs."  Additionally, as with travel, lodging costs for out-of-town counsel are not reimbursable absent a showing that local counsel could not have done the work.

With respect to computer-assisted legal research, the Court compared the expenses requested for computer-assisted research with the time identified by counsel as devoted to legal research.  In many instances, particularly in the early part of the case, there does not appear to be a correlation.  For example, although reimbursement was sought for legal research in August and November 2004, July 2005, March 2006, June–August 2009, and July 2010, plaintiff does not appear to have sought reimbursement for *time* spent researching legal issues during those months.  In months in which plaintiff sought compensation for time spent on legal research, the Court cannot correlate the time expended with the amount requested.  Nevertheless, other requests for compensation for computer-assisted legal research appear to be more in line with the time requested.  Thus, the Court will allow plaintiff to recoup half of the requested computer-assisted research fees.  Moreover, the Court will deny plaintiff's request for $3,161.94 in payments plaintiff made to other research services or individuals with whom he consulted.  For example, plaintiff seeks $1,864 for "legal services" rendered by Ron M. Landsman, P.A., including telephone conferences, email, reviewing documents, and a "draft memo."  Plaintiff seeks similar compensation for legal services rendered by Peg Shaw and the National Legal Research Group.  Thus, after deducting $3,161.94 for these expenses, the Court will allow plaintiff compensation for half of the remaining $6691.39 requested for computer-assisted legal research, or $3345.70.

The Court will deny the majority of what plaintiff categorizes merely as "expenses."  Most of these are either non-compensable or provide insufficient detail from which the Court can

determine their reasonableness.[21]   The Court will also deny $1,764.07 in mock trial expenses.

These qualify neither as expenses nor costs.

|  | Requested | Reduction | Allowable |
|---|---|---|---|
| Courier & Delivery | $676.24 | -$338.12 | $338.12 |
| Facsimiles | $217 | -$108.50 | $108.50 |
| Express Mail | $590.72 | -$295.36 | $295.36 |
| Postage | $103.10 | -$51.55 | $51.55 |
| Long Distance Calls | $1295.50 | -$647.75 | $647.75 |
| Photocopies | $13,544.79 | -$6,772.40 | $6,772.40 |
| Travel Expenses | $12,774.57 | -$10,158.67 | $2,615.90 |
| Legal Research | $9853.33 | -$6,507.63 | $3,345.70 |
| Other Claimed "Expenses" | $738.90[22] | -$738.90 | $0 |
| Mock Trial | $1,764.07 | -$1,764.07 | $0 |
| *TOTAL* | **$41,558.22** | **-$27,382.95** | **$14,175.28** |

With respect to costs, the Court will allow reimbursement for costs enumerated in § 1920.

Plaintiff requested $300 in reimbursement for filing fees and a bond.  The Court may

only reimburse $150 of this, which accounts for the filing fee paid to this Court.  Plaintiff has

provided no authority for the proposition that the Court may tax as costs fees paid to the probate

court.

The Court has allowed plaintiff to recover most of the costs sought for transcripts.

Plaintiff primarily requested reimbursement for print and electronic transcripts of depositions.

The Court has allowed most of these costs with the exception of costs related to "no shows" and

---

[21] These include "publication costs," "meeting with Kelly Bagby, Esq.," preparation of slides and timeline for an unspecified purpose, mediation catering, parking costs for plaintiff, train travel for an unspecified person, a computer charger, and other expenses.  The only expenses that appear to be compensable are subsumed in other categories.  These include $137.48 to copy MRI films and a $121.90 videographer fee for the de bene esse deposition of Elliot Gersh, M.D.  While the costs of illustration fees and copies of trial exhibits would normally be compensable, the Court cannot separate them from larger charges.  For example, plaintiff seeks $9,560 for charges including "case development, trial support, equipment rental, travel, mileage, and parking" as well as illustration fees and prints.  Only the latter are compensable and the Court cannot separate them from the larger bill.

[22] Under the heading "expenses," plaintiff seeks $738.90 for publication costs, meeting and catering costs, a book, and a computer charger.  Plaintiff also claims costs for travel and lodging under the heading "expenses," as well as costs for a media specialist and trial exhibits.  The Court addresses these costs as part of the discussion of travel expenses above and fees for exemplification below.

an appearance fee for one deponent.  The statute provides for costs for "printed or electronically recorded *transcripts*," it does not provide for all costs associated with the taking of depositions.

Next, plaintiff has not sought reimbursement for printing other than the costs of photocopying, which are accounted for above, and various copies which are included in the costs for "exemplification" and "copies" obtained for use in the case.  Plaintiff has, however, requested witness fees for three witnesses: Shireen Hodge, Sarah Jenkins, and Philip Husband. The Court may only allow compensation of $40 per day (including travel time) for court and deposition appearances by witnesses.  *See* 28 U.S.C. § 1821.  Plaintiff apparently seeks $239.61 in witness and appearance fees for Shireen Hodge, but it is unclear if she was deposed on multiple days.  Without more information, the Court cannot determine the amount she should be compensated at the $40/day rate.  Additionally, plaintiff seeks witness fees for Sarah Jenkins and Phillip Husband but does not state that these individuals were in attendance at a deposition.  The Court cannot award witnesses fees based on such a record.

Next, plaintiff seeks $15,341.64 for exemplification and copies.  This amount includes $24 for copies of a death certificate, $137.48 for copies of MRI films, $1317.16 for copies of medical reports, and $13,735 for payments to Amicus Visual Solutions for slides and a timeline for an unspecified purpose, pretrial and trial services, and a powerpoint for mediation.  The Court will allow compensation for the copies of the death certificate, MRI films, and medical records. Additionally, with respect to the Amicus Visual Solutions charges, the Court will allow $3862.50 for exhibit illustration fees and time working on a powerpoint for the mediation sessions as well as $1162 for exhibit illustration fees, an exhibit notebook, and prints for trial.  The Court will not allow $8398 in reimbursement for payments to Amicus for "case Development: Total hours

outside of trial," unspecified "trial support," equipment rental, travel time, mileage, or parking fees.

Finally, plaintiff seeks $979.50 for private process servers.  Such costs are not taxable under § 1920 and the Court will not allow reimbursement.   *See Zdunek v. Washington Metro. Area Transit Auth.*, 100 F.R.D. 689, 692 (D.D.C. 1983) ("While 28 U.S.C. § 1920(1) authorizes taxation of the service fees charged by [Marshal], there is no statutory authorization for awarding the fees of special process servers, as costs.").

|  | Requested | Reduction | Allowable |
|---|---|---|---|
| Fees of the clerk and marshal | $300 | -$150 | $150 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in case | $22,489.83[23] | -$480 | $22,009.83 |
| Fees and disbursements for printing and witnesses | $329.61[24] | -$329.61 | $0 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in case | $15,341.64 | -$8,398 | $6,943.64 |
| Docket fees under section 1923 of this title | N/A | N/A | N/A |
| Compensation of court appointed experts, etc. | N/A[25] | N/A | N/A |
| Other:  Private process servers | $979.50 | -$979.50 | $0 |
| *TOTAL* | **$39,440.58** | **-$10,337.11** | **$23,644.57** |

### 3.    Experts Not Compensable

The District argues that $86,302.50 in expert fees sought by plaintiff are not compensable under 42 U.S.C. § 1988.  Def.'s Opp'n 23 (citing *Casey*, 499 U.S. at 102); *Heller*, 832 F. Supp. 2d at 61).  Plaintiff responds that *Casey* was legislatively overruled by the Civil Rights Act of 1991 which amended § 1988 to allow a court to award expert fees.

---

[23] This amount includes $22,245.98 for deposition costs, and $243.85 for various transcripts.

[24] Although plaintiff has requested compensation of $86,302.50 in expert fees in addition to the $329.61 in other appearance and witness feesPlaintiff does not appear to seek any additional costs for printing.

[25] Again, the Court addresses plaintiff's request for expert fees separately below.

*Casey* held that the phrase "a reasonable attorney's fee as part of the costs . . . ." does not encompass the award of expert witness fees, other than the per diem fees set in 28 USC § 1821 and that expert fees are not available without "explicit statutory authority.".  499 U.S. at 86–92.

Although Congress amended § 1988 in response to *Casey*, it did not alter the definition of a "reasonable attorney's fee."   Instead, it merely provided, in a new subsection (c), for the allowance of expert fees in actions to enforce only §§ 1981 or 1981a, not § 1983.  *See* 42 USC 1988(c) ("[I]n any action or proceeding *to enforce a provision of section 1981 or 1981a of this title*, the court, in its discretion, may include expert fees as part of the attorney's fee."); *see also Jenkins by Jenkins v. State of Mo.*, 158 F.3d 980, 983 (8th Cir. 1998) (internal citations omitted) ("The parameters of the question before us are set by [*Casey*] . . . ,which held that expert fees could not be shifted to the losing party under § 1988 . . . .  Congress amended § 1988 after *Casey* to authorize the award of expert fees in cases brought under 42 U.S.C. §§ 1981 and 1981a, but that amendment does not affect this section 1983 case.").   The Court is aware of no other statutory authority for the compensation of expert fees in § 1983 actions.   Thus, expert fees are not available and the Court will disallow $86,302.50 in expert witness fees.   Although plaintiff may recoup $40 per day for expert witnesses appearing at a deposition or in court, plaintiff has not provided the Court with sufficient information from which to determine the appropriate level of compensation.

## IV.   CONCLUSION

Plaintiff initially requested $1,675,946.55 in attorneys' fees.   Based on the analysis above, the Court will reduce that request by the following amounts:

- $6,267.00 to account for the fact that Mr. Williams should only be compensated at $445 per hour, rather than $505 per hour, for time expended prior to 2003;

- $363,609.50 to account for time spent on claims against both the District and the Symbral defendants;

- $30,528.63 to account for time the District identified as relating only to the Symbral defendants, but which actually relates to both the District and Symbral defendants;

- $3,030 for the travel time of Mr. Matthews;

- $6,316.56 to account for the fact that travel time should be compensated at fifty percent of the attorney's hourly rate;

- $7,831.57 to account for time identified as related only to the Symbral defendants, but which actually pertains to both Symbral and the District;

- $1,010 for press and City Council related activities;

- $818 for activities that should have been compensated at the paralegal rate;

- $21,368 for time lacking sufficiently detailed descriptions;

- $27,382.95 for non-compensable expenses;

- $10,337.11 for non-compensable costs;

- $86,302.50 for non-compensable expert witnesses.

This brings plaintiff's total award to $1,118,976.30. Interest will run on this amount starting today pursuant to 28 U.S.C. § 1961(a).

The Court also denies the District's request for discovery. First, the District no longer needs access to an electronic version of plaintiff's hours because the District has already scanned and electronically searched those records. Second, discovery regarding plaintiff's settlement with Symbral is not relevant to the Court's decision today. Finally, discovery regarding hours omitted from plaintiff's fee request is unnecessary.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on June 26, 2013.